15 minutes per side. Go ahead, please. Good morning. May it please the court, I am Marsha Pearson and I'm here on behalf of the appellants today. As it stands right now, the Kentucky Supreme Court has said there is no such thing as a pre-dispute arbitration agreement that can encompass a wrongful death claim. This is contrary to the Federal Arbitration Act and to the U.S. Supreme Court case Marmot in which the Supreme Court held unanimously, summarily, and emphatically that blanket prohibitions on pre-dispute arbitration agreements for wrongful death claims were preempted by the FAA. Well, has the Kentucky Supreme Court actually held that? I mean, it would be subject to arbitration if all the heirs of the estate agreed to it ahead of time, would it not? Well, what the Kentucky Supreme Court has said is that we can still arbitrate wrongful death claims, we just can't do it under a pre-dispute arbitration agreement. And we know that that's their response to that because they've articulated that in a footnote in the Weissman case that came out a couple of Thursdays ago. But the problem with that is that is analogous to saying, we're still going to let you get a liability waiver, you just have to get it signed after they bungee jump. That is inconsistent with Kentucky law currently. It places arbitration agreements on a different footing than Kentucky treats other contracts and it's improper under the FAA and Concepcion. And that is where the district court made their error in relying on Ping to find that the wrongful death claim here cannot be arbitrated. In talking about federal arbitration act preemption, we look to Concepcion to supply the test that we use to figure out what claims will be preempted. Concepcion envisions situations where you are facing a facially discriminatory state rule or law that will exclude a claim or a group of claims from arbitration. And Concepcion holds that when you're faced with a facially discriminatory rule of law that interferes with the FAA, the analysis is straightforward. It is preempted. And that is what the rule of law in Ping does. And in order to assess that, we have to look at the entire context of the Ping case and how the Ping court got to that decision. Because as we've stated, it is inconsistent with the treatment of other contracts under Kentucky law that bind non-signatory wrongful death beneficiaries. Can you give us some examples? Well, the decision of Judge Van Meter in the Kentucky Court of Appeals, where he addressed that very issue and says there aren't any previous decisions. Well, there is a previous. Are you familiar with that case? I don't know if you're talking about the Cox case. Are you talking about the Peters case? Cox. Cox. OK. That case. And he's looking exactly for that, which seems to me the right thing. You'd want to see what Kentucky law says about pre-injury contracts in the wrongful death context. Sure. That's the way I'm thinking about it. treats certain pre-injury contractual obligations as invalid or not binding and others as binding, then it's discriminating, the argument goes. But he couldn't find any. Well we have cited in our brief the Peters case, which is a US District Court case. Yes, it is. Not real persuasive. Well, it's persuasive in the sense that what it shows is that the interest that is, well, it says that a decedent can waive claims that he or she's wrongful death beneficiaries would have in that particular case. But you have to look beyond just the case law. You have to look at how we treat, in general, contracts that are signed by a decedent that ultimately affect the interest in their estate and, subsequently to that, the wrongful death beneficiaries. I can go buy a car today and my wrongful death beneficiaries are bound to pay for that car. I can go put a second mortgage on it. That's not a wrongful death suit, though. No, it's not. I'm looking for a suit that involves wrongful death because then you say you're wrongful death beneficiaries, but you're talking about, in the car case, you're talking about the wrongful death beneficiaries who also happen to be the administrators of your estate. But in the context of the analysis in Ping, it's that they're different people, right? That's their analysis in Ping. Well, their analysis is that, and this goes to the first question under Concepcion about being facially neutral and what we look at. In order to reach the Ping decision, the Ping court had to conflate and misconstrue what the rights are of the wrongful death beneficiaries to a wrongful death claim. They should know, though, right? I mean, they're the Supreme Court of Kentucky. They should know what the rights are under Kentucky law. Well, and yes, they're allowed to make Kentucky law. What they're not allowed to- They're also allowed to read and figure out what Kentucky law is and tell us. Yes, even if it is inconsistent with past approach and also flies in the face of other law, that is true, and that's why we need to focus here on the preemption argument. I can understand your argument is, if it is, this is what Kentucky law is, but it violates Marmot. That makes sense to me. Right. But to be arguing about what Kentucky law is and saying the Supreme Court of Kentucky is wrong about what Kentucky law is, that sounds like a non-starter, doesn't it? Well, and luckily, we don't end there. Let's see how you can even begin there. Well, when we look at Conception and what it says about preemption, there are two pieces to that analysis, and what we've been discussing is the first piece. Is this facially neutral? You're asking me, show me another contract that we treat differently about wrongful death. And what I'm saying is, we've discussed how there are ways that a decedent can bind his estate and heirs to claims under contracts signed before he or she passes away. And they're suing under a wrongful death statute? Not exactly. So there is no precedent then? Well, there's precedent in the way that when we look at how we treat a wrongful death claim, that the analogy is the same. And the reason that's true is because when we look at what the wrongful death beneficiaries actually have and what they actually get from that claim, this agreement does not alter in any way what they get, because they never have the right to choose the forum for their claim anyways, even after PING. That's always a right that's vested in the personal representative. But moving on to my second point is that we can agree here today that PING is substance neutral and we still get to preemption. And this is the part, and this is the fallacy that the PING court made, the Wissman court made, and what the district court made here, is that there's one last piece to that conception and analysis, and it's that even if we're dealing with a generally applicable contract defense or a substance neutral policy, we have to look at how that state rule affects the FAA and the enforceability of contracts, and if it stands as an obstacle to the goals under the FAA, it is still preempted. And in this particular case, categorically excluding wrongful death claims from arbitration, particularly based on the nature of the wrongful death claim, which is one breach of one duty that was owed to one person by one defendant. Yet what we're doing by PING and what PING does, whether on purpose or just impliedly, is it allows the—there are there to be two recoveries on that in two different forms. The purpose of the FAA is to ensure enforcement of arbitration agreements according to their terms, which, by the way, the arbitration agreement here absolutely says wrongful death is encompassed, personal injury is encompassed, so we've got an arbitration agreement which according to its terms speaks to wrongful death. But it's to streamline the proceedings and to place arbitration agreements on the same footing as other contracts. We don't allow claim splitting when it comes to wrongful death and personal injury. In other words, we don't say, okay, PR or personal representative, you can go to the court and you can file a claim for all of the estate-related claims and you can recover for the loss of the power to earn money by the person injured. And then we're going to also let you go over here and file another claim for essentially identical damages, the destruction of the power to labor and earn a living, and we're going to let you get two bites of that apple. That absolutely cannot be what the FAA intended, and in fact it says that— Does Kentucky allow that or not? No, Kentucky does not allow claim splitting. In the case of Raymond's estate, now it's an oldie, but it's still good law. What does Kentucky allow? I mean, the decedent, his pain and suffering through his lifetime would be subject to arbitration, would it not? It would. And what— That's claim splitting, isn't it? Is it not? And then his earnings, well, his earnings through his lifetime would be subject to arbitration too, would it not? Yes. Okay, so Kentucky does allow claim splitting. Well, what would happen is, by the rule of law articulated in Ping, we are saying you can arbitrate your personal injury claims, which a part of a personal injury claim would include the loss of the power to labor and earn money by the person that was injured, okay? The claim and the damages under wrongful death are—and this is why we don't allow claim splitting—are virtually the same. You don't allow—who's we? The court in Raymond's administrator, the Kentucky Supreme Court, it's an old case from 1909, but it's still good law. You just told me Kentucky does allow claim splitting. I mean, the claims that accrued during the decedent's lifetime are split from claims that accrue after his death. No, they're not. They're generally brought in one action by the personal representative of the estate who prosecutes those claims on behalf of all of the people that—the heirs of the decedent. So we don't allow claim splitting when it comes to that. That is precisely why Ping is contrary to law, because it allows the personal representative now to split the claims for personal injury. Ping is contrary to what law? Well, to the law, it's 411, KRS 411. Ping is contrary to Kentucky law? Yes. We're getting back to Judge Rogers' point. Whatever Kentucky law is, it's what the Kentucky Supreme Court says it is. Is that correct? And why I'm taking the time to talk to that is because part of the analysis under Concepcion is whether the state rule of law shows a hostility to arbitration agreements, which is precisely why the FAA was created in 1926. And this is—my time is up here. Do you really think Congress in 1926 meant to preempt all of the state rules of law that—I mean, the concept of federalism, of the federal government is in this sphere, the state governments are over here. You think Congress's intent in 1926 was to take all this power away from the states? I think that it was to ensure the consistent enforcement of arbitration agreements, and we know how the U.S. So that they would not be disfavored, I think. And that they would be enforced according to their terms. They were put on equal footing of other contracts, but Congress didn't intend to change state law, did they? To overrule state law? Yes, and the Supremacy Clause supports that. Okay. All right. I know we're out of time. If there were case law in Kentucky that said that contracts limiting the ability to recover for something I'm about to do were binding on wrongful death plaintiffs after he died, if there were such cases, then you could show some kind of discrimination under Marmot. But in the absence of that, why should we assume that there's such—we don't have cases like that, right? Well— We just have cases—you just think on the basis of other cases that the Supreme Court of Kentucky would probably hold that way, but there's no cases that hold that way, so we're sort of left with the discrimination between two things, one of which hasn't ever occurred yet. Well, we're not entirely left with just that. What we've also been left with is Marmot's emphatic proclamation about the FAA clearly encompassing wrongful death claims and its policies in favor of arbitration applying, and also the second piece of the Concepcion analysis that says even if you're dealing with—just the scenario described—even if you're dealing with, okay, we can't say that this is not substance neutral, you have to look at the effect on arbitration, and in this case, it affects it improperly. Thank you, counsel. May it please the Court. My name is Robert Salyer, and I represent the appellee in this case, Adrian Nichols. I actually don't have that much to say up here, Your Honor, but there are a few points I do want to get across. First off, with respect to Beverly Enterprises versus—or Ping versus Beverly Enterprises and whether or not the holdings in that case represent obitur dicta, they clearly did not. The Federal Arbitration Act is a federal statute, therefore the final determiner of the meaning of that statute is the U.S. Supreme Court. Ping set forth an alternative basis regarding the wrongful death claims in that case, and the Kentucky Supreme Court since then has just assumed that this is the law of Kentucky, that a decedent may not bind his or her wrongful death beneficiaries to an arbitration agreement. I think we understand that. All right. And, Your Honor, appellants in their brief asserted that neither the appellee nor the Kentucky Supreme Court has said that this proposition would also affect releases. Well, at least on behalf of the appellee, we most certainly would say that the Kentucky Supreme Court is saying that, that a decedent may not release the wrongful death benefits on behalf of his or her beneficiaries. And because of that, the federal case cited by appellants, State of Peters versus U.S. Cycling Federation, was incorrectly decided. The U.S. District Court made a... If we were to come up with case law, high court case law in Kentucky, which said that, for instance, a release prior to getting onto a carnival ride, for instance, would bind the wrongful death beneficiaries of someone who died on the ride, then marmot would come into play. Is that not true? You just say there are no such cases. That's what Judge Van Meter said. There are no such cases, so therefore, there's no such discrimination. There is no such discrimination, and that is... But in my hypothetical, if there were, then you'd have a marmot problem at least. Is that correct? Yes. If I follow your Honor's line of reasoning... Because we'd be discriminant, because Kentucky would be saying, well, these are separate people from the survival plaintiffs, the survival claim plaintiffs, but we're going to treat them as the same for some purposes, just not for arbitration purposes. That would look like they were discriminating against arbitration. That's right, Your Honor. Kentucky Supreme Court has made it clear. They made it clear in a case, Pete v. Anderson, which is subsequent to Ping, and reiterated again in this newest case, Wissman, which is not quite final yet, that the wrongful death beneficiary interest is owned not by the decedent, and therefore the decedent cannot bind it in any way, presumably. So we don't have any cases like that. The wrongful death liability depends in some sense on a duty to the decedent, doesn't it? I mean, if there was no tort duty, for instance, the wrongful death plaintiff would not be able to sue, right? Or is that not right? Well, Your Honor, that's true, but that occurs in all sorts of tortious situations where a... You could... If the lack of a duty does keep the wrongful death beneficiary from being able to recover, you could arguably say that by executing the release, you've relieved him of his duty. I'm not sure I understand you, Your Honor. Well, you could say, I consent that you hit me. You hit me, and I die. The wrongful death plaintiff shouldn't be able to recover there because he consented to being hit. Not under the Kentucky case law? They could. I'm sorry, Your Honor? They could recover in that case, even though it's not a battery against the individual? Well, there is an extra complication of what the intentional tort there, and whether or not one can consent to that. Your Honor, I have to say that I'm not entirely familiar with all that that might require. But it's pretty clear that the Kentucky Supreme Court has construed KRS 411.130 as establishing a different interest belonging to different people that the decedent may not bind. Now, I understand that. I'm just pointing out that the content of that interest is derived from the duty that was owed to the decedent. Well, Your Honor? Or depended upon, or defined by, or whatever you want to call it. Or am I wrong about that? I understand what Your Honor is saying, but that occurs in lots of different potential tort examples that I can think of, where the initial factual predicate that establishes negligence occurs to one person, but then it flows out to cause damages to other people. Just because the original tort feesee is the one experiencing the direct negligence does not mean that they have the ability to bind all of those down the line who are also injured by this. Now, appellants have said that Ping has said that pre-dispute arbitration agreements are not possible. Now, Your Honor, I'm certainly willing to defend that position. However, the Kentucky Supreme Court has not actually said this. They have not said this. They did not say it in Ping. They did not say it in Pete versus Anderson. They did not say it in this newest Wisman case. But we have to keep in mind that the case that is on appeal here is a U.S. District Court case wherein the judge simply said that Ping does not inhibit the arbitration of wrongful death claims, but rather they must be made with the wrongful death beneficiaries. Now, that's what's in front of this court right now. And that's a correct. Do you not agree with that? I do agree with that. I do agree with that. I'm just saying that that is the question that the appellants have to face and not a hypothetical one that. It would be hard and impractical ahead of time to go out and get a release signed by all the potential wrongful death beneficiaries ahead of the death, I think. But it's theoretically possible, huh? It's theoretically possible. That case has not yet arisen where that's directly addressed. However, I just want to point out, Your Honor, just because something is difficult does not mean that the Federal Arbitration Act means that the normal operation of a contract offer and acceptance can be just done away with, that one side can offer and the acceptance, the assent to the contract can just be done away with because it would frustrate the purposes of the Federal Arbitration Act to encourage arbitration. I mean, that is a great overreach from Concepcion, which referred merely to California's holding as unconscionable certain terms in arbitration agreements. Thank you, Counsel. If there are no further questions, that's all I have. Thank you, Counsel. Judge Griffin, I want to clarify, it would be impossible to get a pre-dispute wrongful, a pre-dispute arbitration agreement that encompassed a wrongful death claim because the injury is death and we cannot identify the wrongful death beneficiaries of an individual until their death. So, we don't even know the class of people that it's very hard and impractical to go find to sign the agreement until death and if we have to wait until then, then we have no pre-dispute arbitration agreement. I would assume the Kentucky wrongful death statute must list beneficiaries. I mean, what's the listings in the statute of who recovers? Well, the problem is that just like in this case where Charlie Nichols was admitted to the facility in 2011 and passed away in 2012 is that those people on the day that he was admitted may be very different than those who... You may have somebody that dies or he might have another birth or something like that but you do have a class of beneficiaries, don't you, that is statutorily defined. And they're all constantly changing. There could be a divorce, there could be a marriage, there could be a death, there could be a birth. And so, the fact that we can't say these are the wrongful death beneficiaries before the death means that if we have to wait until after the death, we have done away with pre-dispute arbitration agreements. You might miss one or you might have an addition and I guess for that person it wouldn't cover the release but the release would be effective as to the other ones, right? Well, it would be exactly where we are with Ping is that we are in two forums potentially, again, which is not in furtherance of the FAA. I wanted to also address you, Justice Rogers, about other agreements that are made. I don't think any of us dispute here today that if I entered into... If I resolved any claim that Charlie Nichols had before he passed away with him directly, in other words, he said, I feel like I've suffered a personal injury here at the facility. I want to resolve that claim. If I resolved that claim with him during his life, I think that none of us are saying that we feel like that the wrongful death beneficiaries would then be able to come back and say, you may have resolved that with him but you haven't resolved that with me and therefore I get to file an action. That makes sense to me but you don't have any cases to say that. And Judge Manmeater says, well, show me some. Yeah. I don't know whose burden it is to show one way or the other but we don't have any like that. Well, I would posit that... It would be much stronger, wouldn't it? I would posit that the strong, emphatic federal public policy in favor of arbitration under the FAA would give the doubt on the fact that there just hasn't been other cases to enforcing the agreement. Isn't, I mean, for federal preemption, the intent has to be clear. Does it not for federal preemption as opposed to in doubt? I mean, if there is doubt, don't we rule against federal preemption instead of in favor of federal preemption? Well, it's a layered question because when we're in doubt about arbitrability, we're supposed to rule in favor of arbitration. And a preemption... You're talking about federal preemption. Does this federal law preempt state law? And you're saying, well, when in doubt, we are going to invoke federal preemption. I would think the burden goes the opposite way. Am I wrong? Well, I think that Marmot put that to rest that if there are obstacles set up to the categorical preclusion of an arbitration of a particular type of claim, it is preempted. Sure, if it preempts... I mean, if state law prohibits a whole category of matters to be arbitrated, that's different. Well, and that's what we have here. This is Marmot. We do not have pre-dispute arbitration agreements anymore for wrongful death in Kentucky. One other point is that in this particular case, even if you believe that this is a neutral, substance-neutral policy, we still look to the second part of conception. And even if you don't find that the rule of law articulated in Ping frustrates the purpose of the FAA, what we have in this particular situation is the arbitration agreement was signed by Charlie Nichols in 2011 that... You're past your rebuttal time. Yeah. It's a little late for it. We'll look at that argument in your briefs. Thank you. Thank you, counsel. Case will be submitted.